STATE of Wisconsin, Petitioner-Respondent,

v.

Lenny KEDING, Defendant-Appellant.

Court of Appeals

*No. 96–3082. Oral argument July 23, 1997.—Decided October 23, 1997.*

(Also reported in 571 N.W.2d 450.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James B. Connell* of *Crooks, Low & Connell, S.C.* of Wausau, and oral argument by *James B. Connell*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general, and oral argument by *Warren D. Weinstein*.

Before Eich, C.J., Roggensack and Deininger, JJ.

ROGGENSACK, J. Lenny Keding appeals from an order which committed him to a secure mental health facility after he was found to be a sexually violent person, despite uncontroverted testimony that supervised release was sufficient to protect the interests of the community. Keding challenges his placement on both statutory and constitutional grounds, arguing that it was more restrictive than necessary. Because we agree that Keding's confinement did not comply with the statutory mandate of § 980.06(2)(b) and (c), STATS., we reverse the circuit court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

Lenny Keding is a thirty-eight-year-old man with a full range IQ of seventy-two. There is some indication that his limited verbal and arithmetic skills may be the result of a brain injury or an organic brain dysfunction. He has worked his entire adult life as a farm hand.

365

On June 14, 1993, Keding was convicted of second-degree sexual assault for touching the groin area of an eight-year-old boy who sat on his lap while watching television. The circuit court imposed and stayed a four-year prison sentence, but Keding's probation was revoked in January of 1994. On August 24, 1994, Keding was sentenced to an additional two years, which sentence was stayed, plus seven years probation, following his cashing a forged check at the request of his roommate.

When Keding reached his mandatory release date, the State initiated ch. 980 commitment proceedings against him, and a jury found him to be a sexually violent person subject to the statute. That decision has not been appealed. What is at issue is Keding's subsequent placement by the circuit court.

At the dispositional hearing, both the State expert and the defense expert agreed that a group home setting would offer adequate protection for the public and supervision for Keding. Both doctors stated that Keding could continue to work as a farm hand, so long as he was supervised to ensure that he was not having contact with juveniles under the age of sixteen. The circuit court accepted the fact that supervised release would be appropriate for Keding if there were work available for him. However, because there was no group home available in Wood County, where he had previously worked, and the closest group home in Portage County did not accept sexual offenders, the circuit court sent Keding to the Wisconsin Resource Center—a locked institution—for care and control until such time as he is no longer sexually violent.

## DISCUSSION

**Standard of Review.**

■

A determination of the appropriate placement under § 980.06(2), STATS., is discretionary in nature because it involves consideration of interrelated statutory factors. *See, e.g., State v. Cook*, 66 Wis. 2d 25, 27–28, 224 N.W.2d 194, 196 (1974) (analyzing circuit court's decision to release a patient from a prior commitment order as a discretionary determination). Upon review, we analyze discretionary decisions to determine whether the circuit court logically interpreted the facts of record and whether it applied the correct legal standard to those facts. *State v. Behnke*, 203 Wis. 2d 43, 58, 553 N.W.2d 265, 272 (Ct. App. 1996). If so, we will not disturb the decision, even if it is not one which this court would have made.

However, in considering whether the proper legal standard was applied, no deference is due, because it is this court's function to correct legal errors. Therefore, we will review *de novo* whether the circuit court properly interpreted § 980.06(2), STATS., before ordering Keding placed in a secure facility. *See State v. Carter*, 208 Wis. 2d 142, 560 N.W.2d 256 (1997) (applying *de novo* review to the legal standard used in a sentencing context).

**Section 980.06, STATS.**

Section 980.06(2), STATS., directs the circuit court to determine whether a sexually violent person will be committed to a secure mental health facility or allowed supervised release. Paragraph (c) provides in part that:

If the court finds that the person is appropriate for supervised release, the court shall notify the department. The department and the county department under s. 51.42 in the county of residence of the person, as determined under s. 980.105, shall prepare a plan that identifies the treatment and services, if any, that the person will receive *in the community*. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment. The department may contract with a county department, under s. 51.42(3)(aw)1.d., with another public agency or with a private agency to provide the treatment and services identified in the plan. The plan shall specify who will be responsible for providing the treatment and services identified in the plan. The plan shall be presented to the court for its approval within 21 days after the court finding that the person is appropriate for supervised release, unless the department, county department and person to be released request additional time to develop the plan. (Emphasis added.)

At oral argument, the State argued that the phrase "in the community" limited Keding's community placement options to Wood County. Keding, on the other hand, interpreted the phrase to allow placement in any community within the state.

When we are asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). In so doing, we begin with the plain meaning of the language used in the statute. *Id.* If the language of the statute

clearly and unambiguously sets forth the legislative intent, our inquiry ends, and we must apply that language to the facts of the case. However, if the language used in the statute is capable of more than one meaning, we will determine legislative intent from the words of the statute in relation to its context, subject matter, scope, history, and the object which the legislature intended to accomplish. *Id.* We will also look to the common sense meaning of a statute to avoid unreasonable and absurd results. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 766, 300 N.W.2d 63, 71 (1981) (citation omitted).

██

We disagree in the first instance that the term "in the community" is synonymous with "in the county." However, since a reasonable person reading the statute might come to that conclusion after the earlier statutory reference to the county of the subject's residence, we will give closer examination to the scope and context of the statute in order to determine whether the legislature intended to limit community placement to the subject's home county. Our attention is immediately drawn to the remainder of the paragraph at issue. Paragraph (c) continues:

> If the county department of the person's county of residence declines to prepare a plan, the department may arrange for another county to prepare the plan if that county agrees to prepare the plan and if the person will be living in that county. If the department is unable to arrange for another county to prepare a plan, the court shall designate a county department to prepare the plan, order the county department to prepare the plan and place the person on supervised release in that county, except that the court may not so designate the county

department in the county where the facility in which the person was committed for institutional care is located unless that county is also the person's county of residence.

Thus, read in the full statutory context, placement options are *not* limited to the county of residence, if that county lacks the facilities to provide appropriate treatment. Because it is the State, and not the county, which initiates ch. 980 commitment proceedings, a circuit court may consider treatment facility options in any community in the state, although as a practical matter, it makes sense to look to the resources near at hand first.

Having established the proper legal standard, we next look to the record to determine whether the circuit court correctly applied it. The transcript of the dispositional hearing shows that the circuit court may indeed have operated under an erroneous view of the law.

To begin with, the court made a finding that "all of the programs that would be essential to your treatment and to the protection of the community are available in the community except for the one, the linchpin, the key: a supervised residence, a properly supervised residence isn't available," thereby determining that Keding *was* an appropriate candidate for supervised release, *see State v. Hubanks,* 173 Wis. 2d 1, 27, 496 N.W.2d 96, 105 (Ct. App. 1992), but that it could not order it because of Wood County's lack of facilities. Once the circuit court concluded that supervised release was appropriate, it was not the circuit court's task to identify the specific work or treatment programs that Keding would engage in, nor was it the circuit court's job to find him an appropriate residence. Rather, it is the *department's* statutory duty to "arrange for control, care and treatment of the person

in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order." Section 980.06(2)(b), Stats. It is sufficient if the circuit court includes in its order those conditions which it considers necessary for the placement, for instance, in this case, an appropriate job and a residence supervised by someone other than family members. If the department is subsequently unable to arrange for a county to prepare a plan in accordance with the court's order, then the court, itself, can make an order designating a county to do so. Section 980.06(2)(c).

Therefore, we conclude that given the finding that Keding is an appropriate candidate for supervised release if he were to be working as a farm hand, it was an erroneous exercise of discretion to commit Keding to a secure facility rather than following the statutory directive that a plan be prepared to treat and house him consistent with the terms of the circuit court order.

Because we decide this appeal on statutory grounds, we do not reach Keding's constitutional arguments.

### CONCLUSION

We reverse the order of the circuit court and remand to allow the court to exercise its placement discretion in accord with the principles enunciated in this decision.

*By the Court.*—Order reversed and cause remanded.