IN RE the COMMITMENT OF:

STATE of Wisconsin, Petitioner-Respondent,

v.

Ruven SEIBERT, Respondent-Appellant.†

Court of Appeals

No. 97–2554. *Submitted on briefs April 15, 1998.—Decided May 27, 1998.*

(Also reported in 582 N.W.2d 745.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jane Krueger Smith* of Oconto Falls.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J. Ruven Seibert, who was previously committed as a sexual predator under ch. 980, STATS., appeals from the trial court's order denying his petition for supervised release.[1] The trial court found that Sei-

---

[1] In 1996, a jury found Seibert to be a sexually violent person under ch. 980, STATS., based on two convictions for sexual assault of a child in 1984 and 1985. As a result, the circuit court ordered that he be committed to a secure facility pursuant to ch. 980. He was transported to the Wisconsin Resource Center where he has since remained.

311

bert continued to be a sexually violent person and there was still a substantial probability that he would engage in acts of sexual violence unless he remained confined in a secure mental health facility. Seibert contends: (1) the State must also prove that he is treatable in order to continue his commitment in a secure mental health facility; (2) the State violated his right to treatment guaranteed under §§ 980.06(1) and 51.61(1)(f), STATS.; and (3) the appropriate remedy is granting his petition for supervised release. We reject his contentions and affirm the order.

At the hearing on Seibert's petition for supervised release, the State presented testimony of Dr. Raymond Wood, the director for psychological services at the Wisconsin Resource Center, and Dr. Charles Lodl, a licensed psychologist. Wood diagnosed Seibert as suffering from "paraphilia not otherwise specified nonconsent" and an antisocial personality disorder. He described "paraphilia not otherwise specified nonconsent" as meaning in Seibert's case as having, for at least six months, continued recurrent urges, arousals and fantasies for having forced nonconsensual sexual contact. Wood testified that the paraphilia affected Seibert's emotional or volitional capacity and there was a substantial probability Seibert would commit additional acts of nonconsensual sexual violence. He also observed that Seibert harbored attitudes which were degrading to women while also denying the predicate offenses and giving no signs of remorse, guilt or victim empathy. Wood concluded by opining that Seibert was sexually violent and required treatment in a secure mental health facility. Lodl agreed with Wood's diagnosis and did not believe Seibert could be effectively treated in a halfway house.

The trial court found that Seibert suffers from a mental disorder, paraphilia not otherwise specified nonconsent and antisocial personality disorder. It also found that Seibert's current urges, arousals and fantasies for nonconsensual sexual contact and his antisocial personality disorder made the risk substantially higher that he would engage in sexually violent offenses in the future. The court rejected Seibert's argument that he was being "warehoused" and not afforded any treatment. Instead, it found that the State offered treatment programs to Seibert who refused to participate in the program and, consequently, any lack of treatment was due solely to Seibert's refusals and insistence that the treatment program be tailored to his individual wishes, such as a "deniers program." The trial court concluded there was a substantial probability that Seibert would commit sexually violent offenses in the future and the least restrictive environment for effective treatment would be continued secure placement at the Wisconsin Resource Center.

A petition for supervised release is controlled by § 980.08(4), STATS., which provides in relevant part:

> The court shall grant the petition unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not confined in a secure mental health unit or facility. In making a decision under this subsection, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself

or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment.

The determination of the appropriate placement under § 980.06(2)(b), STATS.,[2] is a discretionary act because it involves consideration of interrelated statutory factors. *State v. Keding*, 214 Wis. 2d 362, 366, 571 N.W.2d 450, 451–52 (Ct. App. 1997). Because the language of §§ 980.06(2)(b) and 980.08(4), STATS., is identical in directing the circuit court to consider statutory factors in determining placement, whether to continue placement in a secure mental health facility or place the petitioner under supervised release outside a secure facility remains discretionary with the court. We, therefore, review the circuit court's decision to determine whether it logically interpreted the facts of record and whether it applied the correct legal standard to those facts. *See Keding*, 214 Wis. 2d at 366, 571 N.W.2d at 452.

---

[2] Section 980.06(2)(b), STATS., provides:

(b) An order for commitment under this section shall specify either institutional care in a secure mental health unit or facility, as provided under s. 980.065, or other facility or supervised release. In determining whether commitment shall be for institutional care in a secure mental health unit or facility or other facility or for supervised release, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment. The department shall arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order.

Here, the undisputed evidence shows that Seibert remains a sexually violent person and can be treated only in a secure mental health facility. On appeal, Seibert does not challenge these trial court findings. Instead he urges this court to conclude that the State must prove he is "treatable" in order to continue his commitment in a secure mental health facility. He reasons that, because a respondent has a right to treatment under § 51.61(1)(f), STATS.,[3] the element of treatability must be read into § 980.08(4), STATS., to avoid a conflict in statutes. We are not persuaded.

When construing § 980.08(4), STATS., the objective in interpreting statutory language is to identify and give effect to the intent of the legislature. *See Stockbridge Sch. Dist. v. DPI Sch. Dist. Boundary Appeal Bd.*, 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996). In an attempt to identify the legislature's intent, we first consider the plain language of the statute. *See id.* at 220, 550 N.W.2d at 98 (citing *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996)). If the meaning of the statutory language is clear, we will not look outside the language of the statute to ascertain legislative intent. *See Ball v. Dist. No. 4 Area Bd. of VT&AE*, 117 Wis. 2d 529, 537–38, 345 N.W.2d 389, 394 (1984).

---

[3] Section 51.61(1)(f), STATS., provides:

**Patients rights.** . . . Except as provided in sub. (2), each patient shall:

. . . .

(f) Have a right to receive prompt and adequate treatment, rehabilitation and educational services appropriate for his or her condition, under programs, services and resources that the county board of supervisors is reasonably able to provide within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.

■ By its plain and unambiguous language, § 980.08(4), STATS., requires the State to prove the person is still a sexually violent person and it is still substantially probable the person will engage in acts of sexual violence if not continued in secure institutional care. There is no mention of treatability. It is not the function of courts to rewrite statutes, especially when it involves implementing public policy goals. Thus, under the plain and unambiguous terms of § 980.08(4), STATS., treatability is not an element to be proven at the hearing on a person's petition for supervised release.

Seibert reasons, however, that the right to treatment expressed in § 51.61(1)(f), STATS., requires us to read a requirement of treatability into § 980.08(4), STATS., to avoid a statutory conflict. Persons committed under ch. 980, STATS., are entitled to the patient's rights conferred under ch. 51, STATS., which include the "right to receive prompt and adequate treatment." Section 51.61(1)(f).

■ Seibert's reasoning fails because he presumes the right to treatment equates to being amenable to treatment. That premise has been rejected by both the United States Supreme Court and the Wisconsin Supreme Court. In *State v. Post,* 197 Wis. 2d 279, 308–09, 541 N.W.2d 115, 124–25 (1995), the Wisconsin Supreme Court rejected the argument that a finding of treatability was a constitutionally or statutorily required prerequisite to commitment under ch. 980, STATS. It recognized that the purpose of civil commitment is to treat the individuals' mental illness and protect them and society from their potential dangerousness. *Id.* However, the supreme court observed that

this does not necessarily equate with a constitutional requirement that commitment be based on amenability to treatment nor even on a constitutional right to treatment. *Id.* It adopted Chief Justice Burger's reasoning in *O'Connor v. Donaldson*, 422 U.S. 563 (1975), when he stated that there was

> no basis for equating an involuntarily committed mental patient's unquestioned constitutional right not to be confined without due process of law with a constitutional right to treatment. Given the present state of medical knowledge regarding abnormal human behavior and its treatment, few things would be more fraught with peril than to irrevocably condition a State's power to protect the mentally ill upon the providing of "such treatment as will give [them] a realistic opportunity to be cured."

*Id.* at 587–89 (Burger, C.J., concurring) (footnote omitted).

The Wisconsin Supreme Court concluded that Wisconsin's statutory obligations to treat the person committed under ch. 980, STATS., do not require a finding of treatability nor was this conclusion offensive to the constitution under substantive due process. *Post,* 197 Wis. 2d at 308–09, 541 N.W.2d at 125. Seibert's attempt to distinguish *Post* because it dealt with a commitment as opposed to his post-commitment proceedings is unpersuasive. The reasoning in *Post* is equally applicable here. Simply stated, a right to treatment does not equate to treatability. Thus, whether the proceeding is one under the initial ch. 980 commitment or a later petition for supervised release under § 980.08, there is no constitutional or statutory

requirement that the State prove the person is treatable.

Next, Seibert argues that the State has violated his right to treatment guaranteed to him by § 980.06(1), STATS., and § 51.61(1)(f), STATS., because in his fifteen months at the Wisconsin Resource Center prior to his hearing for supervised release, he received no treatment. Wood reported that Seibert did not believe he had a problem, was not interested in group treatment which he characterized as a joke, and that his efforts toward treatment were intended only to accomplish his release. Seibert was removed from the group treatment program after nine sessions because of his denial of the offenses and continued insistence on an individual counseling program tailored specifically to his wishes.

Seibert argues that the treatment program provided at the center was not tailored to fit his specific needs and, therefore, his refusal actions are excused. To support his argument, Seibert relies on the language in § 980.06(2)(b), STATS., requiring that the care, control and treatment of the individual be undertaken in the least restrictive manner "consistent with the requirements of the person" and § 51.61(1)(f), STATS., granting a person committed under ch. 980 the right to receive "treatment, rehabilitation and educational services appropriate for his or her condition." Additionally, he cites § 51.61(1)(m), STATS.,[4] which

---

[4] Section 51.61(1)(m), STATS., provides:

Have a right to a humane psychological and physical environment within the hospital facilities. These facilities shall be designed to afford patients with comfort and safety, to promote dignity and ensure privacy. Facilities shall also be designed to make a positive contribution to the effective attainment of the treatment goals of the hospital.

grants a person committed under ch. 980 the right to have the facility to which he or she is committed make a positive contribution to the treatment goals of the hospital. Because the treatment goal of the center must be to treat his diagnosed problems and reduce the risk of reoffense, Seibert concludes that the center must design a special treatment program to fit his particular needs. He contends the remedy for the State's failure to provide a treatment program tailored to his needs is his supervised release.

As the State correctly points out, there are several flaws in Seibert's argument. First, and most importantly, the evidence shows that the treatment program at the center is tailored for individuals, including Seibert. Second, both Wood and Lodl agreed that a group treatment modality was the most effective treatment for sexual offenders. Lodl observed that it is understood in the profession that the group counseling modality is by and large the most effective modality and rejected the argument that one-on-one therapy is the accepted, most efficient method of dealing with Seibert's sexual violence. Additionally, Wood explained that although the treatment program was primarily group therapy, there was also treatment available for those patients with problems requiring individual therapy. He concluded, however, that the established treatment program was truly a meaningful treatment for Seibert who refused to participate.

██

Thus, we reject Seibert's argument because, as the trial court found, the center did in fact develop its treatment programs for individuals, including Seibert. The fact that the program fails to meet Seibert's wishes or desires does not make it inappropriate or not tailored to his individual needs. In effect, Seibert would like to

unilaterally control his type of treatment program, a proposition the trial court properly rejected. Also, we note that the center did attempt one-on-one therapy with Seibert, but the program was terminated when, after some lengthy discussions with the counselor, Seibert refused to help establish the goals for his treatment.

Finally, the State argues persuasively that even if Seibert were correct that the center failed to develop a treatment program for his special needs, his conclusion that he should be released would place society at risk for his acts of sexual violence and produces an absurd result. Rather, they argue, his remedy is to litigate that issue and, if successful, obtain appropriate treatment, not supervised release. We agree. In addition, we note that Seibert certainly has the right to refuse treatment as permitted under § 51.61, STATS. That refusal, however, does not then allow him to gain release from a secure mental health facility.

Accordingly, the order denying Seibert's petition for supervised release is affirmed.

*By the Court.*—Order affirmed.