IN RE the COMMITMENT OF Larry J. SPROSTY:

STATE of Wisconsin, Petitioner-Respondent-Petitioner,

v.

Larry J. SPROSTY, Respondent-Appellant.

Supreme Court

*No. 97–3524. Oral argument April 9, 1999.—Decided June 30, 1999.*

(Also reported in 595 N.W.2d 692.)

317

318

For the petitioner-respondent-petitioner the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the respondent-appellant there was a brief by *T. Christopher Kelly* and *Thomas, Kelly, Habermehl & Mays, S.C.,* Madison and oral argument by *T. Christopher Kelly.*

¶ 1. JON P. WILCOX, J. The State seeks review of a decision of the court of appeals[1] reversing an order of the circuit court for Crawford County, Honorable Michael T. Kirchman. The circuit court initially ordered supervised release of the defendant, Larry Sprosty, under Wis. Stat. ch. 980 (1995–96),[2] the sexual predator law. However, when the county submitted its plan to not release Sprosty because of inadequate resources, the circuit court denied his supervised release. The court of appeals reversed.

¶ 2. The State has presented four issues for our review: (1) is the availability of a facility within the community an appropriate factor for the circuit court to consider under Wis. Stat. §§ 980.06(2)(b) or 980.08(4);[3]

---

[1] *State v. Sprosty,* 221 Wis. 2d 401, 585 N.W.2d 637 (Ct. App. 1998).

[2] All statutory references are to the 1995–96 version of the statutes unless otherwise noted.

[3] The language of Wis. Stat. §§ 980.06(2)(b) and 980.08(4) is identical, except that § 980.06(2)(b) governs placement in the initial commitment order, and § 980.08(4) governs placement in a petition for supervised release. For purposes of this decision, we will only refer to § 980.08(4); however, our decision is applicable to § 980.06(2)(b) as well.

319

(2) does the circuit court have authority to order a county department or the Department of Health and Family Services (DHFS) to create whatever programs or facilities are deemed necessary to accommodate an order for supervised release; (3) does the circuit court have authority to reconsider an earlier decision to order supervised release upon obtaining more complete information on available facilities; and (4) who bears the burden of the cost of the necessary programs and facilities, the county department or DHFS.

¶ 3. We conclude that a circuit court, in its discretion, may consider the availability of facilities to house or to treat a sexual predator under Wis. Stat. § 980.08(4). However, any such consideration must be in keeping with the purpose of providing the "least restrictive" means to accomplish the treatment of the person while also protecting the public. We further conclude that once a circuit court has made a finding and ordered supervised release under § 980.08(4), it is required to order a treatment plan under § 980.08(5) and to ensure that the person is placed on supervised release in accordance with the plan. In some cases, the creation of facilities and services to provide the requisite treatment and to protect the public while a person is on supervised release in the community may be necessary, for which DHFS is responsible. Wis. Stat. § 980.12(1). In this case, the circuit court granted the petition for supervised release, but failed to order Sprosty's release. This was in error. Accordingly, we remand the matter to the circuit court for a determination consistent with this opinion.

## I.

¶ 4. The facts are not in dispute. Sprosty was committed as a sexual predator under Wis. Stat. ch.

980 in 1995. In 1996, Sprosty filed petitions for supervised release, Wis. Stat. § 980.08, and/or for discharge, Wis. Stat. § 980.09. At the evidentiary hearing, experts testified that although Sprosty needed to continue participation in sex offender and substance abuse treatment programs, he could benefit from such treatment on an outpatient basis while living in the community under close supervision. The circuit court agreed and granted Sprosty's petition for supervised release. In its October 18, 1996, order granting the petition, the court required that a treatment plan be developed, and that Sprosty remain in custody until further order of the court.

¶ 5. From late 1996 to early 1997, a social worker for the Wisconsin Resource Center (WRC), Heather Leach, corresponded with the circuit court about an appropriate release and treatment service plan for Sprosty. The WRC clinical staff believed, and the circuit court concurred, that an appropriate plan for Sprosty would include halfway house placement followed by placement in the community on electronic monitoring, intensive and long-term sex offender treatment with a qualified and experienced provider, AODA treatment, and high risk supervision by a Sex Offender Intensive Supervision Program Agent through the Division of Community Corrections. Leach indicated, however, that she was having difficulty locating the requisite treatment and facilities. Crawford County, Sprosty's county of residence, lacked these resources. At the court's request that there be no geographical limits, Leach located four counties, Dane, Milwaukee, La Crosse, and Portage, which had the breadth and depth of resources necessary to appropriately and adequately supervise Sprosty; however, at least some of

the facilities were unwilling or unable to admit him for placement or services.

¶ 6. In April 1997, the circuit court held a status conference and ordered Crawford County to prepare a plan to provide supervised release under Wis. Stat. § 980.08(5).

¶ 7. In June 1997, the circuit court held two additional hearings regarding Sprosty's community treatment plan. At the hearings, the Crawford County district attorney stated that the county, in conjunction with DHFS, developed a plan that addressed the statutory criteria, and determined that Sprosty could not be released because the county did not have the appropriate resources to address his treatment needs in a community setting.

¶ 8. The circuit court agreed that the programs and facilities necessary for Sprosty's treatment and supervision, as well as for the protection of the community, were not available in Crawford County or in other counties. The court concluded that it could not compel private agencies to accept Sprosty, nor would it require the state to build facilities in order to provide supervised release. Because the court would not release Sprosty under conditions that were less than necessary to ensure his treatment and the protection of the public, it denied his supervised release and returned Sprosty to secure confinement. Sprosty appealed.

¶ 9. The court of appeals reversed. The court determined that the unambiguous statutory language of Wis. Stat. § 980.08(5) does not allow a circuit court to refuse to order release once it has determined that release is appropriate. *State v. Sprosty*, 221 Wis. 2d 401, 409, 585 N.W.2d 637 (Ct. App. 1998). Rather, the court reasoned that § 980.08(5) requires that if the person's county of residence is unable or unwilling to

prepare a plan, and no other counties agree to prepare a plan or accept the person into their program, the committing court must designate a county for placement. *Sprosty*, 221 Wis. 2d at 408–09. The court of appeals remanded the case with directions to the circuit court to order a county to do what is necessary for Sprosty's release. *Id.* at 409. The State appeals.

## II.

¶ 10. The first issue we address is whether the circuit court may consider the availability of facilities, the feasibility of creating facilities if they do not exist, and the cost of such creation when deciding whether to place a sexually violent person on supervised release under Wis. Stat. § 980.08(4).[4] To resolve this issue, we must interpret Wis. Stat. § 980.08(4). Statutory interpretation presents a question of law that we review independent of the circuit court and the court of appeals. *State v. Szulczewski*, 216 Wis. 2d 495, 499, 574 N.W.2d 660 (1998).

¶ 11. When construing Wis. Stat. § 980.08(4), we must ascertain and give effect to the intent of the legislature. *State ex rel. Reiman v. Circuit Court*, 214 Wis. 2d 605, 613, 571 N.W.2d 385 (1997). To identify the legislative intent, we first examine the statutory language itself. *State v. Martin*, 162 Wis. 2d 883, 893, 470

[4] Sprosty insists Wis. Stat. § 980.08(4) has no bearing on this appeal because the circuit court determined that supervised release was appropriate under § 980.08(5). However, the issues before this court are the issues presented in the petition for review. *State v. Weber*, 164 Wis. 2d 788, 789, 476 N.W.2d 867 (1991). This was one of four issues submitted in the petition for review.

N.W.2d 900 (1991). If the meaning of the statute is clear, we will not look outside of the language of the statute to discern legislative intent. *Id.* at 893–94.

¶ 12. Wisconsin Stat. § 980.08(4) provides in part:

> The court *shall* grant the petition unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not confined in a secure mental health unit or facility. In making a decision under this subsection, the court *may consider, without limitation because of enumeration,* the nature and circumstances of the behavior that was the basis of the allegation in the petition. . ., the person's mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment. [Emphasis added.]

¶ 13. The general rule in interpreting statutory language is that "the word 'shall' is presumed mandatory when it appears in a statute." *Karow v. Milwaukee Co. Civil Serv. Comm'n,* 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978). "Further support is given to a mandatory interpretation of 'shall' when the legislature uses the words 'shall' and 'may' in a particular statutory section, indicating the legislature was aware of the distinct meanings of the words." *GMAC Mortgage Corp. v. Gisvold,* 215 Wis. 2d 459, 478, 572 N.W.2d 466 (1998).

¶ 14. The legislature used the words "shall" and "may" in Wis. Stat. § 980.08(4). The court *shall* grant the petition for supervisory release unless the state

proves that the person is still sexually violent and that it is still substantially probable the person will engage in acts of sexual violence if not in secure institutional care. § 980.08(4). In making its decision, the court *may* consider, without limitation because of enumeration, such things as where the person will live and how the person will support himself or herself. *Id.* Therefore, we "can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Karow*, 82 Wis. 2d at 571.

¶ 15. We conclude that the plain language of Wis. Stat. § 980.08(4) requires the circuit court to grant the petition for supervisory release unless the state proves its case by clear and convincing evidence. We also conclude, as other courts have, that the plain language of Wis. Stat. § 980.08(4) permits, but does not require, the circuit court to consider the statutory factors in making its decision on whether supervisory release is appropriate. *State v. Seibert*, 220 Wis. 2d 308, 314, 582 N.W.2d 745 (Ct. App. 1998); *see also State v. Keding*, 214 Wis. 2d 363, 367, 571 N.W.2d 459 (Ct. App. 1997).[5]

¶ 16. The State does not contest the mandatory nature of Wis. Stat. § 980.08(4) if it fails to prove its case. Nor does it question the court's broad discretion in determining the appropriateness of supervisory release.

¶ 17. Nevertheless, the State argues that Wis. Stat. § 980.08(4) is ambiguous because it is unclear whether in making its determination, the circuit court

---

[5] While the word "shall" can be construed as directory in order to carry out the legislature's clear intent, *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 479, 572 N.W.2d 466 (1998), the parties do not appear to argue that the legislature intended its command to be directory.

may factor in the availability of facilities with the necessary security or the cost in creating the necessary facilities. The State insists that the language "where the person will live" means that the circuit court should consider whether facilities which possess the necessary security for the individual are available and willing to undertake the person's supervision *before* supervised release can be ordered. We do not agree with either premise.

¶ 18. It is undisputed that the committing court has broad discretion when determining if the person is appropriate for supervised release under Wis. Stat. § 980.08(4). *Seibert*, 220 Wis. 2d at 314; *see also Keding*, 214 Wis. 2d at 367. In making its decision on supervisory release, a circuit court *may* consider *without limitation because of enumeration* several factors, such as "where the person will live" and what arrangements for treatment are available. § 980.08(4). We construe the listed statutory factors contained in § 980.08(4), not as limitations on what can be considered in determining supervisory release, but as several examples of factors that *may* be considered in determining whether supervisory release is appropriate. In the context of where the person may live and what arrangements for treatment are available such things as the availability of facilities, security, and cost considerations may, in the court's discretion, factor into the court's decision on the appropriateness of supervisory release.

■■

¶ 19. This does not mean, however, that the circuit court can or should consider whether the available facilities are willing to undertake the person's supervision *before* ordering supervised release. This places the proverbial cart before the horse. As stated above, the petition must be granted "unless the state proves by

clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if not confined" in a secure mental health unit or facility. Wis. Stat. § 980.08(4). While the court can include in its order conditions which it considers necessary for placement, prior acceptance of the person into those facilities or programs is an inappropriate consideration at the hearing on the petition for supervisory release. *See Keding*, 214 Wis. 2d at 371. If the court concludes that supervisory release is appropriate, it is then *DHFS's* statutory duty to "arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order." Wis. Stat. § 980.06(2)(b) and (d); Wis. Stat. § 980.08(6); *see Keding*, 214 Wis. 2d at 370–71.

¶ 20. Any consideration of costs or availability of facilities must be in keeping with providing the "least restrictive" means to accomplish treatment of the person and the protection of the public. *See State v. Post*, 197 Wis. 2d 279, 313, 541 N.W.2d 115 (1995); *State v. Carpenter*, 197 Wis. 2d 252, 271, 541 N.W.2d 105 (1995). In addition, such considerations should not ultimately trump the granting of a petition for supervised release when the state has failed to prove its case. Wis. Stat. § 980.08(4).

### III.

¶ 21. The next issue we consider is whether the circuit court has the authority under Wis. Stat. § 980.08(5) to order a county department or DHFS to create whatever programs or facilities are necessary, regardless of cost, to accommodate an order for supervised release. Whether § 980.08(5) requires release,

even creating facilities necessary for release, once the court has determined supervised release is appropriate involves the interpretation of the statute. Statutory construction presents a question of law which we review de novo. *Szulczewski*, 216 Wis. 2d at 499.

¶ 22. Our goal, in statutory interpretation, is to discern and to give effect to the intent of the legislature. *State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 538, 579 N.W.2d 678 (1998). To achieve this, we first look to the plain language of the statute. *Id.* If a statute is unambiguous, this court will apply the ordinary and accepted meaning of the language of the statute to the facts before it. *Id.*

¶ 23. Wisconsin Stat. § 980.08(5) provides the procedural framework for a committing court to follow once the court has determined that supervised release is appropriate under § 980.08(4). Section 980.08(5) provides in part:

> If the court finds that the person is appropriate for supervised release, the court *shall* notify the department. The department and the county department under s. 51.42 in the county of residence of the person. . .*shall* prepare a plan. . . .The plan *shall* address the person's need[s]. . . .The plan *shall* specify who will be responsible for providing the treatment and services identified in the plan . . . . The plan *shall* be presented to the court for its approval. . . .If the county department of the person's county of residence declines to prepare a plan, the department may arrange for another county to prepare the plan if that county agrees to prepare the plan and if the person will be living in that county. If the department is unable to arrange for another county to prepare a plan, the court *shall designate a county department to prepare the plan, order the county department to prepare the plan and*

*place the person on supervised release in that county. . . .*

██

¶ 24. We conclude that Wis. Stat. § 980.08(5) is clear and unambiguous. The use of the word "shall" is mandatory. *See Karow*, 82 Wis. 2d at 570. If supervised release is appropriate, the court shall notify DHFS, DHFS and a county department shall prepare a plan, the plan shall address the person's needs, the plan shall specify who is responsible for providing treatment and services, and the plan shall be presented to the court. § 980.08(5). If DHFS is unable to arrange for a county to prepare a plan, the court shall designate and order a county through DHFS to prepare a plan, and place the person on supervised release in that county. *Id.*

¶ 25. According to the State, the court of appeals incorrectly read the language in Wis. Stat. § 980.08(5) that the court "shall designate a county department to prepare the plan. . .and place the person on supervised release in that county" as requiring the person's release once the court has determined that supervised release is appropriate. The State contends that when § 980.08(5) is read together with § 980.08(4), it is clear that the legislature intended the circuit court to consider the cost of any placement together with all of the other factors in determining whether supervised release is appropriate. In the case of sexually violent persons, the State maintains that the legislature did not intend DHFS to build whatever was necessary to create a placement for supervised release.

¶ 26. Wisconsin Stat. § 980.08(4) deals exclusively with whether the committing court shall grant a petition for supervised release. The circuit court is required under sub. (4) to grant the petition for super-

vised release unless the state proves it case. § 980.08(4). As explained in the previous section, in the context of where the sexually violent person may live or what arrangements for treatment are available, the availability of facilities, security, and cost considerations may factor into the court's decision on the appropriateness of supervised release. Section 980.08(5), on the other hand, sets forth the procedures to be followed *after* supervised release under § 980.08(4) is deemed appropriate.

¶ 27. Wisconsin Stat. § 980.08(5) is unambiguous even when read in conjunction with subsec. (4). Procedurally, once a committing court determines a person should be released and has imposed its commitment order under subsec. (4),[6] subsec. (5) requires that a treatment plan be developed and that the person be released in accordance with that plan. Section 980.08(5) is mandatory and it requires strict compliance. *Keding*, 214 Wis. 2d at 371.

¶ 28. Wisconsin's sexual predator law survived constitutional challenge, in part, because the nature and duration of ch. 980 commitments are to be reasonably related to the purposes for those commitments. *Post*, 197 Wis. 2d at 314–16. The principle purposes of ch. 980 are the protection of the community and the treatment of sexually violent persons. *Post*, 197 Wis. 2d at 313; *Carpenter*, 197 Wis. 2d at 271. The control, care and treatment of the committed person is to be in "the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order." Wis. Stat. § 980.06(1) and (2)(b).

---

[6] The court may include in its order those conditions which it considers necessary for placement. *State v. Keding*, 214 Wis. 2d 363, 371, 571 N.W.2d 450 (Ct. App. 1997).

¶ 29. In creating the sexual predator law, the legislature sought to protect the community from sexual predators, to provide treatment for sexually violent persons, and when appropriate, to provide this treatment under supervised circumstances within the community. *See* Wis. Stat. §§ 980.07(1) and 980.08. In *Carpenter* and *Post*, this court accepted the state's affirmation that "[it] is prepared to provide specific treatment to those committed under ch. 980 and not simply warehouse them," *Carpenter*, 197 Wis. 2d at 267, and that "the legislature will proceed in good faith and fund the treatment programs necessary for those committed under chapter 980." *Post*, 197 Wis. 2d at 308. The creation of facilities and services to provide treatment under supervised conditions within the community is not contrary to these stated purposes.

¶ 30. Accordingly, we hold that a circuit court has the authority under Wis. Stat. § 980.08(5) to order a county, through DHFS, to create whatever programs or facilities are necessary to accommodate an order for supervised release.

## IV.

¶ 31. We must next address whether the circuit court has the authority to reconsider an earlier decision to order supervised release upon obtaining more complete information on available facilities. The State argues that because the circuit court had the discretion to consider the availability of facilities and their costs in the first instance, it had the inherent power to reconsider its initial decision when confronted with more complete information. We disagree.

¶ 32. Wisconsin Stat. § 980.08(5) sets forth the procedures to be followed if supervisory release is

331

deemed appropriate. Section 980.08(5) provides in relevant part:

> **(5)** If the court finds that the person is appropriate for supervised release, the court *shall* notify the department. . . .If the county department of the person's county of residence declines to prepare a plan, the department may arrange for another county to prepare the plan if that county agrees to prepare the plan and if the person will be living in that county. If the department is unable to arrange for another county to prepare a plan, the court *shall* designate a county department to prepare the plan, order the county department to prepare the plan and place the person on supervised release in that county. . . .[Emphasis added.]

¶ 33. The language of Wis. Stat. § 980.08(5) is clear. Supervised release has been deemed appropriate; all that remains is the development and implementation of a treatment plan. If DHFS is unable to arrange for a county through DHFS to prepare a plan, then the circuit court shall designate a county to prepare a plan, it shall order the county to prepare a plan, and it shall place the person on supervised release in that county after the plan has been completed. *Id.* The statute places these mandatory duties on the circuit court. *See Keding,* 214 Wis. 2d at 371. Nothing in § 980.08(5) allows the court to reconsider its decision on supervisory release because of inadequate facilities; rather, it must order a county to develop a plan, and it must place the person on supervised release pursuant to the plan in that county. § 980.08(5).

¶ 34. The State relies on *State v. Brady,* 130 Wis. 2d 443, 388 N.W.2d 151 (1986) and *State v. Castillo,* 205 Wis. 2d 599, 606, 556 N.W.2d 425 (Ct. App. 1996),

for the proposition that a court can reconsider a commitment order for a sexually violent person after the original commitment order becomes unworkable.

¶ 35. *Brady* is inapplicable. In *Brady*, the state sought reconsideration of a suppression order based on a recently released United States Supreme Court decision. *Brady*, 130 Wis. 2d at 446. This court determined that a circuit court has the discretion, in some circumstances, but is not compelled to reconsider an order under these circumstances. *Id.* at 448.

¶ 36. In this case, the State never sought reconsideration of the order for supervised release. In fact, the circuit court was reviewing the proposed treatment plan for Sprosty under Wis. Stat. § 980.08(5); it was not reconsidering whether the State had proved its case for continued secure confinement under Wis. Stat. § 980.08(4). *Brady* simply does not support the State's position.

¶ 37. *Castillo* is distinguishable as well. In *Castillo*, the defendant agreed to admit to the allegations in the petition for commitment as a sexually violent person in exchange for community placement. *Castillo*, 205 Wis. 2d at 605. The state later filed a motion to reopen and to modify the dispositional order because it was unable to fulfill the agreed-upon community placement. *Id.* at 605–06. The court of appeals held that because the state was unable to keep its part of the plea agreement that the defendant be placed under community-based supervision, the defendant must be allowed to withdraw his no contest plea to the allegations in the petition. *Id.* at 610–11.

¶ 38. Here, the State never filed a motion to reopen and modify the order for supervised release. Instead, it presented a treatment plan that proposed not releasing Sprosty into the community contrary to

the court's commitment order. Moreover, the court did not conduct a second hearing on the appropriateness of supervised release. Instead, the court determined that it could not order a private agency to admit Sprosty, nor would it require the state to build facilities to accommodate him. However, Wis. Stat. § 980.08(5) requires the court to do just that—the court must order a county to develop a plan and it must place the person on supervised release in that county once it has determined that supervised release is appropriate under § 980.08(4). § 980.08(5).

¶ 39. The State seems to suggest that DHFS and the county's plan to return Sprosty to secure institutional care constituted a satisfactory treatment plan. We disagree.

¶ 40. Wisconsin Stat. § 980.08(5), which governs the procedures to be followed if supervisory release is deemed appropriate, directs DHFS and the county department to prepare a plan that identifies the *treatment and services*, if any, that the person will receive *in the community*. *Id.* "The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment." *Id.* The plan is to specify who is responsible for providing the treatment and services, and the plan must be presented to the court for approval within 60 days after the court finding that the person is appropriate for supervised release. *Id.*

¶ 41. A proposal to return the person to a secure institutional facility does not comport with Wis. Stat. § 980.08(5). Section 980.08(5) directs that the plan identify treatment and services the person will receive *in the community*, not upon return to a secure institutional facility such as WRC. We do not accept the

State's position that a "plan" to do nothing constitutes a "plan" or complies with the mandatory directives of § 980.08(5).[7]

¶ 42. In this case, the circuit court determined that Sprosty was appropriate for supervised release and treatment in the community. Wisconsin Stat. § 980.08(5) unambiguously directs that when supervised release is considered appropriate, the circuit court order a plan be developed that will achieve release and treatment in the community while also protecting the public. The court's order to return Sprosty to a secure facility was erroneous; the court should have designated and then ordered a county to develop a treatment plan, and ordered Sprosty's supervised release in accordance with that plan. We, therefore, remand the matter to the circuit court to designate and order a county to develop a plan, consistent with § 980.08(5), that provides for Sprosty's supervised release and treatment in the community.[8]

---

[7] Sprosty argues that the letter from the Crawford County social worker, Heather Leach, to Judge Kirchman, dated March 13, 1997, does not constitute a "plan" under Wis. Stat. § 980.08(5) because the "report" simply summarizes Leach's reasons against a release plan. Because we conclude that the State's proposal to return Sprosty to secure institutional care does not comply with § 980.08(5), we need not decide whether Leach's letters to Judge Kirchman were adequate or were in the requisite form of a "plan."

[8] Placement options are not limited to the county of residence. *Keding*, 214 Wis. 2d at 370. If the county of residence lacks the facilities to provide appropriate treatment, the circuit court may consider treatment facility options in any community in the state. *Id.*

## V.

¶ 43. The final issue for our review is to decide who bears the burden of the cost of the necessary programs and facilities under Wis. Stat. ch. 980, the county department or DHFS. The State argues that the court of appeals decision calls into question whether the county department or DHFS has the financial burden for creating the programs or facilities necessary to place a sexually violent person on supervised release. The State maintains that Wis. Stat. ch. 980 places the financial burden of providing the appropriate treatment and facilities on DHFS. Sprosty counters that costs are not an issue on this appeal because no government entity has been ordered to finance Sprosty's supervised release. Because the issue is likely to arise on remand, we address the question in the interest of judicial efficiency.

¶ 44. Wisconsin Stat. § 980.12 states that DHFS "shall pay from the appropriations. . .for all costs relating to the evaluation, treatment and care of persons evaluated or committed under this chapter." Any possible questions raised by the court of appeals decision have been answered by the legislature.

¶ 45. This position is further supported by our decision in *Rolo v. Goers*, 174 Wis. 2d 709, 497 N.W.2d 724 (1993). In *Rolo*, we held that DHSS (now DHFS) was financially responsible to fund conditions of release for an indigent person committed under Wis. Stat. § 971.17 (1987–88) because DHSS was charged with the responsibility for "custody care and treatment" of such persons. *Rolo*, 173 Wis. 2d at 723. We distinguished § 971.17 commitments from county-funded treatments for civil commitments, Wis. Stat. § 51.42(1)(b)(1987–88). *Rolo*, 174 Wis. 2d at 722–23.

¶ 46. Similarly, Wis. Stat. § 980.06(1) provides that a person found to be sexually violent "be committed to the custody of [DHFS] for control, care and treatment until such time as the person is no longer a sexually violent person." Section 980.06(1) is not a form of county-funded treatments for civil commitments either.

¶ 47. Thus, we agree with the State that the responsibility to find, arrange and plan for necessary programs and facilities is shared between DHFS and the county where the person will live, or such other designated county. Wis. Stat. § 980.08(5). And as requested by the State, we now hold that DHFS has the financial burden of paying for necessary programs and facilities for those persons who are evaluated or committed under Wis. Stat. ch. 980.

*By the Court.*—The decision of the court of appeals is affirmed and the cause remanded to the circuit court for further proceedings consistent with this opinion.

¶ 48. DAVID T. PROSSER, J., did not participate.

¶ 49. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I do not join Part V of the opinion. I agree that the county must develop the plan. Majority op. at 332, 334–35. That's settled.

¶ 50. There is no dispute in this case about who will pay for the programs and facilities. No adverse parties are debating this issue. This court should not be rendering an advisory opinion.

¶ 51. The following exchange between Justice Crooks and defense counsel at oral argument clearly

demonstrates that the issue of who will pay for the programs and facilities is not before this court.

JUSTICE CROOKS: Mr. Kelly [defense counsel], why shouldn't we reach the issue of who has the financial responsibility?

MR. KELLY [defense counsel]: Whether it's the state or the county? Basically because Mr. Sprosty doesn't care; he wants to be released to a community setting. I'm an advocate for Mr. Sprosty. I don't represent the county. We don't have a situation in which a county has been ordered to pay anything. In fact, nobody has been ordered to do anything.

JUSTICE CROOKS: But don't you think it would help your client's position if indeed this court said the responsibility is with the state rather than with the county? Don't you think that would speed things along a bit?

MR. KELLY: Maybe in the sense that the state has more money than counties do. I could take that position. But I don't think Mr. Sprosty's freedom should hinge on who pays, and I don't think that's the issue which is ripe for consideration by this court. Nobody raised the issue in the trial court as to whether the state was going to pay or whether the county was going to pay. That wasn't something that Judge Kirchman was asked to decide. Nobody raised that issue in the court of appeals and I don't read the court of appeals decision as making a decision on that issue. I think what the court of appeals told Judge Kirchman was that he has to require a county to prepare a release plan and if there isn't a facility that is currently available then it's up to the county to create some kind of a release plan that accomplishes the goal of the statute. The court of appeals didn't say who has to pay for it. So at this point there hasn't been any kind of adversarial rela-

tionship in this case that would squarely put that issue before the court.

JUSTICE CROOKS: But I was just going to say that in telling the county that the county is to prepare that plan, it seems to me that impliedly the court of appeals is saying "County, you better have a facility available." In other words, I think you can read the approach taken by the court of appeals as putting the burden on the county, and that's why it seems to me that you would want to take a position on behalf of your client. Otherwise the next battle is going to be which agency, the state or the county or governmental organization has the responsibility to meet the requirement.

MR. KELLY: I'm not sure that's going to be a battle because I hear the state saying in this case that we agree we ought to pay for it.

JUSTICE CROOKS: I think that's what Dr. Weinstein is saying. I don't know if he's really able to speak clearly for the state in that regard.

MR. KELLY: I would hope he does but unless we get to a position where a county says "We have been ordered to pay for this and we think the state should pay for it" and the state then says, "No, we don't have to pay for it; it's the county's responsibility"—until that happens there isn't any kind of an adversarial battle that will ripen into a dispute that this court should decide. At this point, that issue just hasn't come up in the case because nobody has asked—or nobody has ordered, rather—a county to spend any money on anything.

¶ 52. For the reasons set forth, I do not join Part V of the opinion.