IN RE the COMMITMENT OF August T. KRUEGER:

STATE of Wisconsin, Petitioner-Respondent,

v.

August T. KRUEGER, Respondent-Appellant.

Court of Appeals

*No. 00–0152. Submitted on briefs January 23, 2001.—Decided March 20, 2001.*

2001 WI App 76

(Also reported in 626 N.W.2d 83.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jack E. Schairer*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. August Krueger appeals from orders dismissing his petitions for discharge from his WIS. STAT. ch. 980 commitment.[1] After Krueger petitioned for discharge in 1997, the trial court found that Krueger had established probable cause for discharge and scheduled a jury trial. Before trial, Krueger and the State stipulated that instead of proceeding with a trial on outright discharge, Krueger would agree to supervised release as provided in WIS. STAT. § 980.08. The trial court accepted the stipulation and ordered the State of Wisconsin Department of Health and Family Services to prepare a release plan.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 2. The trial court approved the department's release plan. Ultimately, difficulties finding a residence for Krueger derailed the planned release. The trial court granted the State's motion to rescind the stipulation and rescheduled the jury trial on Krueger's discharge petition. The State then moved the court to reconsider its earlier finding that there was probable cause to have a jury trial on the discharge. The trial court reversed its earlier decision and cancelled the jury trial. In 2000, Krueger filed a new petition for discharge that the trial court also dismissed. Krueger now appeals the dismissal of both discharge petitions.

¶ 3. Krueger seeks reinstatement of the order for his supervised release, arguing that the trial court erred when it rescinded its order on grounds that the department could not locate a residence for Krueger. In the alternative, Krueger seeks a reversal of the order dismissing his 1997 discharge petition so that he can proceed with a jury trial. Krueger's second argument is based on the theory that the State is estopped from moving to dismiss the discharge petition because it urged the court the vacate the stipulation providing for supervised release and proceed with the jury trial on Krueger's discharge petition. Finally, Krueger argues that the trial court erred when it found there was no probable cause for a hearing based on Krueger's new petition for discharge.

¶ 4. We conclude that the trial court erroneously exercised its discretion when it granted the State's motion to vacate the order for supervised release. Accordingly, we reverse and remand with instructions that the trial court reinstate the supervised release order and amend the release plan as needed to effectuate supervised release. With respect to the petition for discharge filed in 2000, we reverse the trial court order

because the State on appeal has failed to address Krueger's challenges to the trial court's decision.

## FACTS

¶ 5. Although the procedural facts are somewhat lengthy, we recite them in some detail in order to fully explain the basis for Krueger's appeal and our decision. In 1996, Krueger was found to be a sexually violent person as defined in WIS. STAT. ch. 980 (1995–96), and was committed to the custody of the Department of Health and Family Services for control, care and treatment. *See* WIS. STAT. § 980.06(1) (1995–96). The order for commitment specified that Krueger was to receive institutional care, as opposed to supervised release. *See* WIS. STAT. § 980.06(2)(b) (1995–96). Krueger was placed at the Wisconsin Resource Center, a secure mental health facility.

¶ 6. On May 30, 1997, Krueger filed a petition for supervised release pursuant to WIS. STAT. § 980.08.[2]

---

[2] WISCONSIN STAT. § 980.08 provides in relevant part:

(1) Any person who is committed to institutional care under s. 980.06 may petition the committing court to modify its order by authorizing supervised release if at least 6 months have elapsed since the initial commitment order was entered, the most recent release petition was denied or the most recent order for supervised release was revoked. . . .

. . . .

(3) Within 20 days after receipt of the petition, the court shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate, who shall examine the person and furnish a written report of the examination to the court within 30 days after appointment. . . . .

(4) . . . The court shall grant the petition unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care. . . .

The trial court appointed Dr. Michael Galli to examine Krueger and file a written report with the court. *See* WIS. STAT. § 980.08(3). Galli met with Krueger on June 19 and July 10 and ultimately issued a written report concluding that Krueger is not a sexually violent person.

¶ 7. On July 18, Krueger filed a petition for discharge pursuant to WIS. STAT. § 980.09(2), citing Galli's

---

(5) If the court finds that the person is appropriate for supervised release, the court shall notify the department. The department and the county department under s. 51.42 in the county of residence of the person, as determined under s. 980.105, shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment. If the person is a serious child sex offender, the plan shall address the person's need for pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen. The department may contract with a county department, under s. 51.42 (3)(aw)1.d., with another public agency or with a private agency to provide the treatment and services identified in the plan. The plan shall specify who will be responsible for providing the treatment and services identified in the plan. The plan shall be presented to the court for its approval within 60 days after the court finding that the person is appropriate for supervised release, unless the department, county department and person to be released request additional time to develop the plan. If the county department of the person's county of residence declines to prepare a plan, the department may arrange for another county to prepare the plan if that county agrees to prepare the plan and if the person will be living in that county. If the department is unable to arrange for another county to prepare a plan, the court shall designate a county department to prepare the plan, order the county department to prepare the plan and place the person on supervised release in that county, except that the court may not so designate the county department in any county where there is a facility in which persons committed to institutional care under this chapter are placed unless that county is also the person's county of residence . . . .

report as support for his petition.[3] In August, Krueger also submitted a report by Dr. Diane Lytton, who concluded that "there is not a substantial probability that Mr. Krueger will engage in act[s] of sexual violence."

[3] WISCONSIN STAT. § 980.09(2) provides in relevant part:

(a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07 (1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

(b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue. At a hearing under this paragraph, the committed person is entitled to be present and to the benefit of the protections afforded to the person under s. 980.03. The district attorney or the department of justice, whichever filed the original petition, shall represent the state at a hearing under this paragraph. The hearing under this paragraph shall be to the court. The state has the right to have the committed person evaluated by experts chosen by the state. At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed under s. 980.06 to determine whether to modify the person's existing commitment order.

¶ 8. After several hearings,[4] the trial court in November issued an order denying Krueger's WIS. STAT. § 980.08 petition for supervised release, concluding that the State had proved by clear and convincing evidence that Krueger is still a sexually violent person and that it is substantially probable that Krueger will engage in acts of sexual violence if not continued in institutional care. *See* WIS. STAT. § 980.08(4). The trial court denied Krueger's petition for discharge, concluding that no probable cause existed to believe that Krueger is no longer a sexually violent person.[5]

¶ 9. Krueger moved the trial court to reconsider its determination that Krueger failed to establish probable cause to support his discharge petition. At a January 1998 hearing, the trial court and the parties discussed the court's November 1997 ruling on supervised release and discharge. The district attorney acknowledged that the purpose of the hearings in the fall of 1997 was to have the court rule "on the ultimate decision of the supervised release and the probable cause section of the petition for discharge."

¶ 10. The trial court acknowledged that its decision to deny Krueger's petition for supervised release

---

[4] The State in its brief observes that the transcripts indicate that there was confusion among counsel and the trial court regarding the appropriate procedures for reexamination under WIS. STAT. § 980.07, petitions for supervised release under WIS. STAT. § 980.08, and petitions for discharge under WIS. STAT. § 980.09. As a result, the trial court heard testimony and argument on numerous issues at the same time.

[5] We also note that since his commitment in 1996, Krueger has received continuing reviews pursuant to WIS. STAT. § 980.07. In each instance, the trial court found that Krueger should remain committed and that placement should remain in an institutional setting.

was made only after weighing the evidence, including expert testimony supporting and opposing supervised release. When the court next considered whether there was probable cause to support Krueger's discharge petition, the court reasoned that if Krueger was not a candidate for supervised release, he certainly was not a candidate for discharge. Accordingly, he denied the discharge petition.

¶ 11. Krueger argued that instead of making the ultimate decision on discharge, the trial court should have simply decided whether there was probable cause for the discharge petition. If the trial court found probable cause for the discharge petition, the petition would proceed to a hearing. Pursuant to *State v. Post*, 197 Wis. 2d 279, 329–30, 541 N.W.2d 115 (1995), Krueger would have the option of requesting a jury for that hearing.

¶ 12. The trial court concluded that its earlier decision was erroneous because it had "jumped the gun" by deciding whether the discharge should be granted, rather than simply determining whether there was probable cause for another hearing. The court then found there was probable cause for a discharge hearing, concluding:

> Facts do exist that warrant a hearing, and the facts that exist are Dr. Lytton's conclusion regarding Mr. Krueger. That is a fact that exists that warrants a hearing on whether he's still a sexually violent person, and this Court should not be making that determination . . . if you [are] now requesting a jury trial on this issue, you can do that.

¶ 13. In response, Krueger indicated that he wanted a jury trial on the discharge petition. The parties scheduled a jury trial for April. Notably, the State did not move the court to reconsider its decision, and

did not file an interlocutory appeal with this court pursuant to WIS. STAT. § 809.50.

¶ 14. The trial was postponed to August 12, apparently for scheduling reasons. One week before the scheduled trial, the parties informed the trial court that they had a proposed stipulation that would negate the need for a jury trial. Defense counsel told the court that the parties were prepared to stipulate that the discharge trial be cancelled and

> [t]hat [Krueger] is an appropriate individual for supervised release pursuant to Section 980.08(5), Wis. Stats[.]; and that the Court may enter an order pursuant to that statute providing that the Wisconsin Department of Health and Family Services and that the Manitowoc Department under 51.42 prepare that plan that is called for by 980.08(5).
>
> We would further stipulate that the county of the respondent's residence is Manitowoc. He has, in fact, lived there for many, many years. The only reason we are pending in Lincoln County is by virtue of some convictions that took place here some time ago.
>
> I would propose that the plan that the Court would order would be submitted for the Court's approval within 60 days after the Court enters this order. . . .
>
> [T]he Court would then conduct a hearing regarding the plan and that both the State or [Krueger] would be free to urge any type of supervised release as he perceives fit. In other words, both parties would have a right to urge modification of the plan providing it still called for supervised release.

The district attorney agreed with this recitation. The trial court asked the district attorney to explain his reasons for the agreement. The district attorney explained that he was concerned that if Krueger was

successful at the jury trial, he would be "outright released." The district attorney continued:

> The State, being somewhat unwilling to take that risk, factors that in; also factors in the fact that he's been in custody at the Wisconsin Resource Center for what amounts to . . . about two-and-a-half years. When I first started getting involved in the 980 cases, I was told by people at the facility that treatment would take no more than two years. That assumes full cooperation.
>
> It's my understanding that Mr. Krueger has completed a variety of the courses and can address the additional treatment needs out of house, so to speak, not inpatient stays being required.
>
> So on that factual basis, Judge, we are asking that the Court approve of this stipulation reached by the parties. To me as a prosecutor it is the safest course, because if he was to be released outright tomorrow or next week, I think no one would benefit from those facts, including Mr. Krueger.

¶ 15. The trial court asked the district attorney additional questions about his conclusion that Krueger could complete the remainder of his treatment on an outpatient basis. The district attorney indicated that his opinion was based on the reports in the record, including the report filed by Galli, the court-appointed expert.

¶ 16. The trial court stated that before it would approve the stipulation, it wanted the district attorney to again contact the Wisconsin Resource Center to make sure that the center "doesn't say there was something unknown here that would gravely alter the district attorney's analysis." The trial court also directed the district attorney to contact Galli. "I want to be sure, since this is being done at the recommenda-

tion of the State . . . that there's nothing that would change [the State's] view on this."

¶ 17.   On August 12, the parties appeared before the trial court to confirm the stipulation. The trial court summarized the stipulation:

> Last week the parties informed me . . . that they had reached a stipulation where this would be changed to a supervised release . . . rather than an outright discharge.
>
> The State at that time had said that it felt that it didn't want to take the chance or risk of a jury decision that would discharge Mr. Krueger completely and felt that it was the better option to enter into this agreement. . . . Mr. Krueger felt that he didn't want to take the risk of the jury finding that he should not be discharged and was willing to enter into this compromise, also.

¶ 18.   The district attorney added that his decision to settle the matter was also based in part on Galli's report. He said that he had again spoken with Galli and that Galli had stated that it was his opinion that Krueger is not a sexually violent person, but could nonetheless benefit from community supervision.

¶ 19.   The trial court proceeded to question Krueger in a manner similar to that employed for accepting guilty pleas. The court asked Krueger:

> Do you understand that what you are doing here is you are giving up your chance, your option of being found no longer appropriate for Chapter 980 treatment and therefore being discharged outright, and instead you are going to be going under the conditional discharge, which will require that you be placed and that there be a plan set up and that there be monitoring, that there be treatment of you and things of that nature.

Do you understand that?

In response, Krueger indicated that he understood.

¶ 20. The trial court asked Krueger whether he had been threatened in any way; Krueger responded no. Krueger also indicated that he had had sufficient time to discuss the stipulation with his attorney. Finally, the trial court asked Krueger's attorney whether he felt that Krueger was agreeing to the stipulation "freely, voluntarily, and intelligently." Krueger's attorney responded affirmatively, explaining:

> [Krueger is] aware of the risks involved in trying the case. . . . He's had in excess of a week to think about [the stipulation], and he's been continuously in support of this disposition.
>
> He is aware that while he would desire to reside in the City of Manitowoc that the placement may be any place in Manitowoc County. He's aware that while he would like to return to [his former job] it may not be possible; that he will be under significant regulation; and I believe that his decision to accept this is a rational, thoughtful, and appropriate weighing of the various factors.

¶ 21. After this colloquy, the trial court concluded:

> Fine. All right. The Court notes that under Section 980.08(4)[6] the Court is to grant a petition for

---

[6] The trial court referred to the statutory factors for supervised release contained in WIS. STAT. § 980.08(4) because the parties' stipulation provided that Krueger was an appropriate candidate for release under § 980.08(5). Given that Krueger's petition was originally for discharge, the court could have applied the release standards provided in WIS. STAT. § 980.06(2)(c). This is because the statute governing petitions for discharge provides that if the court is satisfied that the State has established clear and convincing evidence that the peti-

supervised release unless the State would prove by clear and convincing evidence that the person is still a sexually violent person and it is still substantially probable that the person will engage in acts of sexual violence if the person is not confined in a secure mental health unit or facility, and in making that decision, the Court may consider various things, including where the person will live, how the person will support him or herself, what arrangements are available to be sure that a person has access to and will participate in necessary treatment, and I assume you will—that that will be provided by the plan when it is developed.

So the Court at this time, based upon what has been presented here and last week, does approve of the resolution of this matter. The department is to be now notified of this.

¶ 22.    The trial court signed an order incorporating the parties' stipulation.[7] Krueger was thereafter

---

tioner is a sexually violent person, "the court may proceed under s. 980.06 to determine whether to modify the person's existing commitment order." *See* WIS. STAT. § 980.09(2)(c). The provisions for supervised release under § 980.06(2)(c) and § 980.08(5) are identical, except that in the former the department is given 21 days to create a release plan and in the latter, the department has 60 days. Because there is no other substantive difference between § 980.06(2)(c) and § 980.08(5), the fact that the court ordered supervised release for Krueger pursuant to § 980.08 as opposed to § 980.06 does not affect our decision.

[7] The document, entitled "Stipulation for Order," was signed by the parties and the trial court. It provided in relevant part:

> 1.    That the jury trial scheduled for August 12 and 13, 1998 in the circuit Court for Lincoln County on the respondent's petition for discharge may be canceled; and

> 2.    That August T. Krueger is an appropriate individual for supervised release pursuant to Section 980.08(5) Wis. Stats. and the

returned to the Wisconsin Resource Center, pending approval of the plan that the department was to develop over the next sixty days. *See* WIS. STAT. § 980.08(5).

¶ 23.   On November 16, the parties appeared for a status conference at the trial court's request. The trial court said that it had received a letter from the department indicating that the department did not agree with the supervised release. The district attorney summarized his interpretation of the department's position: "Not only we don't agree with it. We're not going to do it. They went further to say, 'We can't do it.' There are no adequate facilities."

¶ 24.   Despite the department's reluctance to develop a plan for Krueger's supervised release, the district attorney made no motion to set aside the stipulation and instead urged the trial court to order the department to proceed with the plan. He stated:

> [Defense counsel] and I discussed the matter prior to this status conference . . . . We are in agree-

court may enter an order pursuant to such statute providing that the Wisconsin Department of Health and Family Services and the Manitowoc Department under 51.42 shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services and alcohol and other drug abuse treatment.

3.   The county of the respondent's residence is Manitowoc.

4.   The plan shall be presented to the court for its approval within sixty (60) days after the court enters this order.

5.   The court shall conduct a hearing regarding the plan and both the state and the respondent are free at such hearing to urge other supervised release plans as either sees fit.

6.   Pending the court hearing on the plan the respondent shall remain as a patient at his present residency, the Wisconsin Resource Center at Winnebago, Wisconsin.

ment, based on a Court of Appeals case[8] that came down in the last quarter that stated where [the trial court orders supervised release] to an outpatient facility and the State comes back with a treatment plan that says, "We don't have the facilities available to do so, so we advocate in-patient treatment . . .," that the trial court ruling stands and the State must provide a plan for outpatient or if no facilities exist, create such facilities as will meet those demands.

I think [defense counsel] and I agree that should be the course of action.

The trial court agreed.

¶ 25.  On December 23, the department produced a proposed supervised release plan for Krueger.[9] The plan stated that Krueger had indicated that he wants to live with his stepfather in Manitowoc, and that his stepfather had agreed. The plan's drafter recommended placement in a more structured and supervised setting, but added that she had called several facilities and they were unwilling or unable to accept Krueger.

¶ 26.  The trial court at a December 29 hearing noted that the department felt strongly that Krueger should not have been granted supervised release. "They made that clear several times in prior correspondence and also now in this report. But the stipulation is

---

[8] The parties were referring to *State v. Sprosty*, 221 Wis. 2d 401, 585 N.W.2d 637 (Ct. App. 1998), which was ultimately affirmed at 227 Wis. 2d 316, 595 N.W.2d 692 (1999).

[9] The plan discussed treatment, employment, rules of supervision, law enforcement notification and other issues. Because the issue of residence was ultimately identified as the key barrier to plan implementation, we do not restate the entire plan.

a matter of record as is the order that he be conditionally released upon that stipulation."

¶ 27.  At the January 27, 1999, hearing to approve the plan, both parties said that they agreed with the plan. Krueger suggested one change to the wording, but the trial court declined to make the change. The parties then agreed that the plan would be implemented in eight weeks, thereby allowing time for notification of local law enforcement and others. The trial court approved the plan and ordered that it be implemented by March 24.

¶ 28.  Approximately one month after the plan was approved, a worker from the Wisconsin Resource Center who was attempting to implement the plan contacted the trial court to report that he was experiencing difficulties with the residence and employment plans for Krueger. In a letter to the court, he wrote:

> [T]he approved supervised release plan for Mr. August Krueger is now looking very doubtful. As the result of the local newspaper publishing the exact release address on the front page of the February 5, 1999 issue, [Krueger's stepfather] is now reluctant to have August reside with him. In addition to harassing phone calls, unknown people have stopped by [the stepfather's] residence to verbally express their dissatisfaction of August living at that location.

¶ 29.  In the same letter, the worker also noted that Krueger's former employer indicated that it would not re-hire Krueger. "This decision was based on the reaction of the community and the article that ran in the newspaper," the worker stated.

¶ 30.  The worker requested an extension of time to create an alternate plan. He also suggested that "it

may be required to look for a residence outside of Manitowoc County. Therefore, an order to investigate resources with the assistance of Human Services in Lincoln County would be required."

¶ 31.   The trial court scheduled a status conference for March 3 to discuss this letter. Noting that Krueger remained at the Wisconsin Resource Center and that the release date had been postponed several times already, counsel for Krueger indicated that he planned to file motions to compel Krueger's release.

¶ 32.   At the same status conference, the district attorney stated that the trial court may need to "revisit the issue of requesting legal enforcement of that stipulation because the facts that all the parties presumed were in existence are not in existence and that raises to my mind a contractual level whether the stipulation that was reached by the parties is even enforceable at this point. So we may need to have a jury trial" on the discharge petition. The district attorney also suggested that if placement with Krueger's stepfather is impossible, the parties should explore housing alternatives with other family members, including those residing in Lincoln County.

¶ 33.   Krueger subsequently moved the trial court to find Joe Leean, Secretary for the department, in contempt for failing to have the department implement the court's order for supervised release. In the alternative, Krueger sought immediate release. The district attorney moved to vacate the order for supervised release on the ground that two expected release conditions, residence and employment, were no longer available.

¶ 34.   At an April 5 hearing, numerous social workers and others testified about their efforts to find Krueger a residence. Krueger's stepfather also testified

that he was willing to have Krueger live with him. The parties agreed that because residence was no longer a barrier to Krueger's release, the release would take place within two weeks.

¶ 35.   However, the trial court also acknowledged that the release faced additional challenges: the stepfather had changed his mind in the past and the stepfather's landlord was threatening eviction. Finally, an assistant attorney general representing the department notified the court that as soon as Krueger was released, he planned to recommend that the department "move quickly to implement the rest of the statute that allows the [department] to move to revoke the supervised release plan."[10]

¶ 36.   The trial court, nonetheless, concluded that the plan should be implemented. Krueger withdrew his contempt motion, and the district attorney did not pursue his motion to vacate the stipulation.

¶ 37.   Ten days later, Krueger's stepfather changed his mind. In a short note, the stepfather wrote that he would not allow Krueger to live with him because he wanted to maintain good relations with his neighbors and landlord. The district attorney renewed

---

[10] Whether the department would be estopped from immediately detaining Krueger is not an issue before this court. However, we note that we are troubled by the assistant attorney general's explicit statement that he would advise the department to do so. The district attorney, acting on behalf of the State, entered into a stipulation that provided for Krueger's supervised release. To suggest that the State would allow supervised release for as little as a day and then move to revoke Krueger's release, absent evidence of a violation while on release, after Krueger gave up his right to a jury trial raises issues of fundamental fairness that will no doubt need resolution by the courts in the future.

his motion to vacate the stipulation. Krueger filed a motion urging the court to amend the plan for supervised release to provide for an alternate residence in Manitowoc County.

¶ 38. At a May 25 motion hearing, the district attorney urged the trial court to vacate the stipulation and proceed with a jury trial on the discharge petition. He stated:

> Here we have an individual who's given up the right to a jury trial, a constitutional right under the principles of fairness and due process. That's what I have been saying all along should be the remedy. Let's go back to where the parties were before the agreement was struck and give the individual his right to his day in court and have the jury decide . . . .

¶ 39. Despite Krueger's objection that the court should instead amend the plan to provide for release to another residence in Manitowoc County, or in any county in the state, the trial court granted the State's motion and ordered that the matter proceed to trial.

¶ 40. Krueger petitioned this court for leave to appeal the nonfinal order vacating the order for supervised release. We denied the request, and Krueger's case was once again scheduled for trial on the discharge petition.

¶ 41. In October 1999, the State filed a motion asking the trial court to reconsider its January 1998 ruling that there was probable cause to believe Krueger was no longer a sexually violent person. At a motion hearing, the trial court informed the parties that it had reexamined the transcripts from 1997 and 1998 and concluded that its original decision finding probable cause for a jury trial on the discharge petition was erroneous. The trial court concluded that Krueger

was not entitled to a jury trial or further hearings on his discharge petition.

¶ 42.    In January 2000, Krueger filed a new discharge petition. The trial court concluded that Krueger had not shown probable cause that he was no longer a sexually violent person and rejected his petition. Krueger now appeals.

¶ 43.    Krueger, arguing that the trial court erroneously vacated its order for supervised release, asks this court to reinstate the supervised release order. In the alternative, he seeks a jury trial on his 1997 petition for discharge. We agree with Krueger's first argument and, therefore, do not address whether the court erred when it reversed its decision finding probable cause for a trial on the 1997 discharge petition. With respect to the 2000 petition for discharge, Krueger asks that this court reverse the trial court's conclusion finding no probable cause for a jury trial. Because the State has failed to respond to Krueger's argument regarding the 2000 petition for discharge, the trial court's order is reversed.

## DISCUSSION

### I.  Vacation of the order for supervised release

¶ 44.    Our review of the trial court's discretionary decision in this case requires synthesis of two key WIS. STAT. ch. 980 cases: *State v. Castillo*, 205 Wis. 2d 599, 556 N.W.2d 425 (Ct. App. 1996), *appeal dismissed as improvidently granted*, 213 Wis. 2d 488, 570 N.W.2d 44 (1997); and *State v. Sprosty*, 227 Wis. 2d 316, 595 N.W.2d 692 (1999). In *Castillo*, the State filed a ch. 980 petition to have Castillo committed as a sexually violent person. *See Castillo*, 205 Wis. 2d at 604. The court found probable cause to believe that Castillo was a

sexually violent person. After two mental health experts and the State agreed that supervised release was appropriate, the State attempted to reach a settlement to enter the commitment order specifying supervised release. *Id.*

¶ 45.   Ultimately, Castillo informed the trial court that he would admit to the allegations in the petition and waive his trial rights in exchange for a court order requiring the Department of Health and Human Services to locate a community placement.[11] *Id.* at 604–05. The court accepted Castillo's admission and then ordered the department to identify a community-based facility. *Id.* at 605.

¶ 46.   The department attempted to place Castillo in a community-based setting. The trial court accepted the department's recommendation that Castillo be placed at a facility called Cephas House. Although Cephas House was initially receptive to the placement, it declined to accept Castillo after negative public reaction to the placement caused the House to fear that the town would take zoning action against it. The landlord also threatened not to renew the lease if Castillo were placed there. *Id.*

¶ 47.   An alternative plan to place Castillo in a private apartment under the supervision of a private social worker also failed after media attention focused on Castillo living at the apartment building. The landlord bowed to community pressure and refused to rent to the department. *Id.*

---

[11] The Department of Health and Social Services was renamed the Department of Health and Family Services, effective July 1, 1996. 1997–98 *Wisconsin Blue Book* at 419. This name change did not alter the department's role as outlined in WIS. STAT. ch. 980.

¶ 48.  The State moved to reopen Castillo's dispositional order and modify it to an institutional placement, since "the attempts to effectuate and execute the court's order for placement have not been successful, [and] a different placement alternative must be established." *Id.* at 605–06. The trial court granted the motion and ordered Castillo committed to the Wisconsin Resource Center. *Id.* at 606.

¶ 49.  On appeal, we recognized that it was within the trial court's discretion to amend its earlier order when it became apparent that the department would be unable to place Castillo in a community-based setting. However, we concluded that the trial court erroneously exercised its discretion when it granted the State's motion and revised the order, committing Castillo to an institution. *Id.* at 610. We concluded that "Castillo's admission to the allegations in the underlying petition was akin to a plea agreement" and held that when the State failed to adhere to its bargained promise, regardless of the reason, the trial court was required to allow Castillo an opportunity to withdraw his plea admitting to the petition. *Id.*

¶ 50.  As a remedy, we granted one of Castillo's alternative requests for relief: withdrawal of his plea admitting to the petition. *See id.* at 611. We declined Castillo's request to require enforcement of the plea. *See id.* at 603 n.1. Judge Richard S. Brown dissented with respect to our remedy, stating that he would direct the trial court to enter an order demanding that the department find a facility for Castillo. *See id.* at 612 (Brown, J., *concurring in part, dissenting in part*). Judge Brown explained:

> What saves the sexual predator law from being unconstitutional is its requirement that DHSS provide the defendant with treatment in the least

restrictive manner possible, not the least restrictive treatment that DHSS has available. Since the trial court found that the least restrictive treatment for Heriberto Castillo, Jr., was supervised community placement, the difficulty that DHSS faced in locating an appropriate facility was not legitimate grounds for later ruling that Castillo should instead be placed at the Wisconsin Resource Center.

*Id.*

¶ 51. Judge Brown also noted, "Although the attorney general's office argues that this court cannot make a state agency appropriate funds without violating the separation of powers doctrine, when the legislature wrote the sexual predator law it imposed a duty on [the department] to provide such facilities." *Id.* at 619.

¶ 52. Judge Brown's dissent was prophetic because four years later in *Sprosty*, the supreme court agreed. *See Sprosty*, 227 Wis. 2d at 320. The trial court in *Sprosty* found after an evidentiary hearing that Sprosty should be placed on supervised release. *Id.* at 321. The department had difficulty placing Sprosty and determined that he could not be released because the county did not have the appropriate resources to address his treatment needs in a community setting. *Id.* at 322. The trial court concluded that it could not compel private agencies to accept Sprosty, nor would it require the State to build facilities in order to provide supervised release. Because the court would not release Sprosty under conditions that were less than necessary to ensure his treatment and the protection of the public, it denied his supervised release and returned Sprosty to secure confinement; Sprosty appealed. *Id.*

¶ 53. We reversed the trial court. *See State v. Sprosty*, 221 Wis. 2d 401, 585 N.W.2d 637 (Ct. App. 1998). Our supreme court affirmed our decision, concluding:

> [O]nce a trial court has made a finding and ordered supervised release under § 980.08(4), it is required to order a treatment plan under § 980.08(5) and to ensure that the person is placed on supervised release in accordance with the plan. In some cases, the creation of facilities and services to provide the requisite treatment and to protect the public while a person is on supervised release in the community may be necessary, for which DHFS is responsible. Wis. Stat. § 980.12(1).

*Sprosty*, 227 Wis. 2d at 320. The court held that a circuit court not only has the authority under WIS. STAT. § 980.08(5), but is also required to order a county, through the department, to create whatever programs or facilities are necessary to accommodate an order for supervised release. *See id.*

¶ 54. Krueger's appeal presents two main issues: (1) whether an agreement to forego a jury trial on a petition for discharge is akin to a plea agreement; and (2) if so, whether *Sprotsy* is inapplicable because the supervised release order was based on a plea agreement, rather than on an evidentiary hearing.

¶ 55. First, we concluded in *Castillo* that although WIS. STAT. ch. 980 proceedings are not criminal in nature, an alleged sexually violent person's admission to the allegations in the underlying petition pursuant to a stipulation is akin to a plea agreement in a criminal case. *See Castillo*, 205 Wis. 2d at 606. We conclude that Krueger's decision to forego a jury trial

on his petition for discharge is likewise akin to a plea agreement.

¶ 56. Having established probable cause for a hearing on his petition for discharge, Krueger was entitled to a jury trial on his petition. *See Post*, 197 Wis. 2d at 329–30. Pursuant to WIS. STAT. §§ 980.09(2)(b) and 980.03, Krueger had other rights as well, such as to have counsel, to remain silent and to present and cross-examine witnesses. At the hearing, the State would have been required to prove by clear and convincing evidence that Krueger is still a sexually violent person. *See* WIS. STAT. § 980.09(2)(b). When Krueger gave up these rights and agreed to accept supervised placement, he effectively relieved the State of its burden to prove he was still a sexually violent person. We conclude Krueger's agreement, like Castillo's agreement with the State, was akin to a plea agreement.

¶ 57. Our conclusion is consistent with the trial court's approach to the plea hearing. We have already noted that the trial court approached the stipulation as if it were a plea agreement. First, the trial court inquired as to the factual basis for the stipulation, asking the State on two occasions whether Galli agreed that supervised release was appropriate. Second, the trial court entered into a colloquy with both Krueger and his counsel to determine whether Krueger's decision to forego his jury trial was made freely, voluntarily, and intelligently. Finally, the trial court restated the factors a trial court considers before ordering supervised release. Ultimately, the trial court accepted Krueger's plea, cancelled the jury trial, adopted the stipulated facts as part of its finding, and ordered supervised release.

¶ 58. Next, we consider whether *Sprotsy* controls the resolution of this case. The State argues that *Castillo*, rather than *Sprosty*, is controlling because the trial court's order for supervised release was based on a stipulation, rather than on evidence adduced at a hearing. We are unconvinced. The trial court accepted the parties' stipulation and ordered supervised release, implicitly finding that although Krueger was a sexually violent person, it was not substantially probable that he would engage in acts of sexual violence if institutional care was discontinued. *See* WIS. STAT. § 980.08(4). Krueger, having given up his right to a jury trial on his discharge petition in exchange for the stipulation, is entitled to the same due process rights as a criminal defendant who has entered a plea agreement.

¶ 59. Having concluded that Krueger's agreement to forego a jury trial in exchange for supervised release was akin to a plea agreement and that *Sprotsy* is equally applicable under these facts, we must next examine Krueger's right to enforcement of the plea agreement. The United States Supreme Court has recognized that once a plea has been entered in accordance with a negotiated plea agreement, a criminal defendant has a constitutional right to enforce the agreement. *See Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984). In this vein, the prosecutor is constrained to abide by the plea agreement when a criminal defendant pleads guilty or no contest pursuant to it. *See Santobello v. New York*, 404 U.S. 257, 262 (1971).

¶ 60. Principles of substantive due process are implicated by and inherent in the process of enforcing a plea agreement. *State v. Scott*, 230 Wis. 2d 643, 651, 602 N.W.2d 296 (Ct. App. 1999). Once a defendant has

given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled. *Id.* at 652. Thus, whatever discretion a prosecutor may have to withdraw from a plea agreement prior to entry of the plea, once the plea is entered, the defendant has a constitutional right to enforcement of the bargain. *See Mabry*, 467 U.S. at 507–08.

¶ 61. In *Castillo*, we concluded that the State violated its plea agreement with Castillo when it failed to adhere to its bargained promise by requesting a modification of the dispositional order to provide for institutional care. *See Castillo*, 205 Wis. 2d at 610. Furthermore, we concluded that because specific performance of the terms of the plea agreement was not possible, the only available remedy was allowing Castillo to withdraw his pleas. *See id.* at 611.

¶ 62. Although the unavailability of a residence was determined to be a barrier to specific performance in *Castillo*, our supreme court's decision in *Sprotsy* mandates a different conclusion in this case. As previously indicated, the trial court accepted the stipulation in lieu of a jury trial, implicitly finding that although Krueger was a sexually violent person, it was not substantially probable that Krueger would engage in acts of sexual violence if institutional care was discontinued. It ordered supervised release as contemplated in WIS. STAT. § 980.08(4). Therefore, the court is required to order a treatment plan under § 980.08(5) and to ensure that Krueger is placed on supervised release in accordance with the plan. *See Sprosty*, 227 Wis. 2d at 320.

¶ 63. The State argues that placement in Manitowoc County is impossible and, therefore, vacation of the stipulation is the only remedy. Pursuant to

*Sprotsy*, however, placement in Manitowoc County is not impossible: "In some cases, the creation of facilities and services to provide the requisite treatment and to protect the public while a person is on supervised release in the community may be necessary, for which [the department] is responsible." *Id.*

¶ 64. In the alternative, the trial court has discretion to amend the release plan to include release in other counties.[12] *See State v. Keding*, 214 Wis. 2d 363, 370, 571 N.W.2d 450 (Ct. App. 1997) (placement options are not limited to the county of residence, if that county lacks the facilities to provide appropriate treatment). "[A] circuit court may consider treatment facility options in any community in the state, although as a practical matter, it makes sense to look to the resources near at hand first." *Id.*

¶ 65. In summary, faced with the impossibility of placing Krueger with his stepfather, the trial court had discretion to modify the release plan to effectuate supervised release, including the power to order the department to create facilities and services. *See Sprosty*, 227 Wis. 2d at 320. Accordingly, the trial court erroneously exercised its discretion when it instead elected to grant the State's motion to vacate the order for supervised release. We reverse and remand with instructions that the trial court reinstate the order for supervised release and, if necessary, amend the release plan to effectuate Krueger's prompt supervised release to Manitowoc County or another county.

---

[12] Indeed, Krueger has already offered to forego placement in Manitowoc County if the court would order the department to investigate placement options in other counties.

## II.  Dismissal of 2000 discharge petition

¶ 66.  After the trial court dismissed his 1997 petition for discharge, Krueger appealed to this court. He also filed a new petition for discharge in January 2000. The trial court found there was no probable cause for a hearing and dismissed the 2000 discharge petition. Krueger appealed that dismissal as well. Krueger moved this court to create a separate appellate case number for the appeal of the 2000 petition, but we denied his request. Consequently, his brief includes arguments regarding both petitions.

¶ 67.  The State has failed to address Krueger's arguments with respect to the January 2000 discharge petition. Accordingly, Krueger's arguments are deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute.). We therefore reverse the trial court's order dismissing Krueger's petition for discharge and remand for a hearing in accordance with WIS. STAT. § 980.09(2)(b). Pursuant to *Post*, 197 Wis. 2d at 329–30, Krueger has the option of requesting that a jury be the fact finder at that hearing.

*By the Court.*—Orders reversed and cause remanded with directions.